UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

COURAGE UHUMWNOMA OSAWE,

    Plaintiff,

vs.

JENNIFER TINSLEY, et al.,

    Defendants.

3:18-cv-00600-RCJ-WGC

**ORDER**

The Plaintiff claims that the Defendants violated his Fourth Amendment and state law rights when they arrested him for selling cars in violation of Nevada law. However, the Plaintiff's Section 1983 claim is barred by qualified immunity. The Court therefore grants the Defendants' Motion for Summary Judgment (ECF No. 10) in part and dismisses the Plaintiff's pendent state law claims for lack of subject matter jurisdiction.

**I.    FACTS AND PROCEDURAL HISTORY**

In 2015, the Plaintiff was arrested and pled guilty to operating as a vehicle dealer without a license—a violation of Nevada Revised Statutes §§ 482.020, 482.322. (Mot. Summ. J. 4:15–17, ECF No. 10.) Those statutes prohibit the sale of four or more personal vehicles in a given year without a proper license. Following an anonymous tip that the Plaintiff was again selling cars illegally, the Defendants, Department of Motor Vehicle officers, began investigating the Plaintiff. (Compl. 3:6–8, ECF No. 1.)

The investigation revealed that the Plaintiff had posted four advertisements for the sale of vehicles on Craigslist. (Mot. Summ. J. 3:19–4:2.) The Craigslist advertisements included a Buick Century,[1] a Range Rover, a Lincoln Navigator, and a Chevrolet Astro. Each advertisement included the Plaintiff's phone number, which matched the number that he used when he was convicted in 2015 of the same crime. (*Id.* at 3:17–18.)

As part of a "sting operation," Defendant Tinsley called and texted the Plaintiff, and they discussed the sale of a vehicle. (*Id.* at 4:8–10.) Through their communications, Defendant Tinsley and the Plaintiff arranged a meeting to purchase one of the vehicles advertised on Craigslist. The investigation culminated in Defendant Tinsley meeting with the Plaintiff's wife. (*Id.* at 5:26–6:3.) After a test drive and a discussion about the price with the Plaintiff's wife, Defendant Tinsley allegedly purchased the Buick. Shortly thereafter, Defendant Pardini arrested the Plaintiff, who was sitting in a nearby vehicle while his wife met with Defendant Tinsley. (App. Mot. Summ. J. 89:4, ECF No. 11.)

Following the arrest, a preliminary hearing was held in state court to address whether there was probable cause. In addition to the facts outlined above, a witness testified that she purchased the Chevrolet from the Plaintiff and communicated exclusively with him, not his wife. (App. 20:15–18, 23:2–12.) The State also presented evidence that the Plaintiff was known to visit local vehicle auctions. (Mot. Summ. J. 3:9–11, 4:14.)

In response, the Plaintiff's wife testified that she sold the Chevrolet and that the Buick— the vehicle involved in the sting operation—belonged to her mother. Furthermore, on cross examination, Defendant Tinsley stated that she did not know who owned the Buick and no paperwork was exchanged. (Opp'n Mot. Summ. J. 6:18–22.) At the conclusion of the preliminary

---

1 There is a discrepancy about the make and model of this vehicle. The Parties refer to the car as a Buick Century in their briefs; however, in the Plaintiff's Declaration and the Plaintiff's wife's testimony in the state district court, it is referred to as an Oldsmobile.

hearing, a justice of the peace found that there was enough evidence to prosecute but stated that the evidence was slight. (*Id.* at 8:6–7.)

The Plaintiff filed a writ of habeas corpus, and upon review, a Nevada district court judge granted the Plaintiff's writ and dismissed the charges. (*Id.* at 8:8–12, 14–17.) The judge determined that the Chevrolet and Buick were family owned vehicles and were not sold for a business purpose, meeting an exception in the statute. Section 482.020. The judge further held that the Craigslist advertisements were inconsequential, since there was no evidence when the advertisements were posted or that the vehicles were registered to the Plaintiff. (*Id.* at 8:18–9:3.)

Shortly after the Plaintiff's release, he brought this Section 1983 action against the Defendants for violations of his Fourth Amendment and state law rights. Prior to filing an answer and conducting any discovery, the Defendants filed the present Motion for Summary Judgment.

## II. LEGAL STANDARDS

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only facts that affect the outcome are material. *Id.*

To determine when summary judgment is appropriate, courts use a burden-shifting analysis. When the party seeking summary judgment would not bear the burden of proof at trial, it satisfies its burden by demonstrating that the other party failed to establish an essential element of the claim or by presenting evidence that negates such an element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgement should be denied if either the moving party fails to meet its initial burden or, if after that burden is met, the other party establishes a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).

## III. ANALYSIS

As a preliminary matter, it is appropriate for the Court to consider summary judgment here before discovery. Under Rule 56(d), a trial court may order a continuance on a motion for summary judgment if the requesting party submits an affidavit showing that it cannot present facts that are necessary to contest the motion without discovery. *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 619 (9th Cir. 2017). To prevail, the requesting party must show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Failure to comply with these requirements "is a proper ground for denying discovery and proceeding to summary judgment." *Id.* Although the Plaintiff argues that summary judgment is premature, the Plaintiff did not file an affidavit listing the specific facts he seeks, and the only sought-after facts mentioned in his brief are not essential to oppose summary judgment. Therefore, because the Plaintiff failed to satisfy these requirements, the Court rejects the Plaintiff's argument that summary judgment is inappropriate.

Moreover, considering summary judgment is vital because of the Defendants' qualified immunity defense. The Supreme Court has "repeatedly" emphasized that courts should decide qualified immunity "'at the earliest possible stage in litigation' in order to preserve the doctrine's status as a true 'immunity from suit rather than a mere defense to liability.'" *Morales v. Fry*, 873 F.3d 817, 822 (9th Cir. 2017) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Qualified immunity is meant to "spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Accordingly, given the directive by the Supreme Court, consideration of the Defendants' Motion for Summary Judgment is apt.

## A. Qualified Immunity

The Defendants argue that the doctrine of qualified immunity bars the Plaintiff's Fourth Amendment claim. The Court agrees, because the Defendants did not violate a clearly established right—every reasonable officer would not have concluded that insufficient evidence existed for probable cause. Thus, the Court grants the Motion for Summary Judgment.

Qualified immunity shields government officials from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The doctrine exists to afford "government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley*, 475 U.S. at 341).

When analyzing qualified immunity as an affirmative defense, courts engage in a two-pronged inquiry. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). Courts ask whether a constitutional right was violated, viewed in the light most favorable to the plaintiff, and whether the right in question was clearly established when the alleged violation occurred. *Al-Kidd*, 563 U.S. at 735. A right is clearly established when "'[t]he contours of the right [are] sufficiently clear' [such] that every 'reasonable official would have understood that what he [was] doing violates that right.'" *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A right is not clearly established unless precedent places "the statutory or constitutional question beyond debate." *Id.* If precedent does not put officials "on notice that [their] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

///

*1. Violation of a Constitutional Right*

The Plaintiff argues that summary judgment is inappropriate, because the Defendants violated his Fourth Amendment rights by arresting him without probable cause. Although the Court finds that the Defendants likely had probable cause, the Court is unwilling to grant summary judgment on this basis, given the Ninth Circuit's holding that probable cause should generally be determined by a jury in Section 1983 actions.

Under the Fourth Amendment, a warrantless arrest requires probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). An officer has probable cause when he has knowledge or information that would cause a prudent person to conclude that a suspect committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause is not a high standard. It only requires a "fair probability" of wrongdoing under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Moreover, officers may rely on hearsay and other evidence that would be inadmissible in court. *Hart v. Parks*, 450 F.3d 1059, 1068 (9th Cir. 2006). The Ninth Circuit has noted that relevant "arrests and convictions can be helpful in establishing probable cause," especially when an arrest or conviction involves the crime being considered in a probable cause analysis. *Greenstreet v. Cty. Of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir. 1988).

For example, in *Hart*, the Ninth Circuit determined that detectives had probable cause to arrest the plaintiff. 450 F.3d at 1066. There, detectives investigated a missing pallet of merchandise and deduced that the missing pallet had been stolen from the plaintiff's employer. *Id.* at 1063. Because of the size of the pallet, they believed that the pallet had been stolen using a forklift and truck. Detectives learned that the plaintiff was employed as a forklift driver, was working when the pallet was supposedly stolen, and had been convicted of theft. *Id.* at 1066. Several anonymous tipsters claimed that the plaintiff was responsible, and multiple coworkers fingered the plaintiff as a suspect, because he was "a known thief." *Id.* at 1062–63. One individual, who detectives found

associated with the plaintiff, called and offered the location of the missing merchandise for reward money. Based on this information, the Ninth Circuit concluded that "substantial evidence" existed to show that the plaintiff was (at least) partially responsible for the theft, even though the charges against the plaintiff were ultimately dropped. *Id.* at 1066. The court held that a fair probability existed that the plaintiff committed the crime, and therefore, the detectives had probable cause for an arrest. *Id.*

Here, the evidence implicating the Plaintiff is even stronger than the evidence that the Ninth Circuit relied on in *Hart*. In both cases, anonymous tipsters and other witnesses incriminated the corresponding plaintiffs, and in both cases the plaintiffs had convictions matching the crimes under investigation. However, unlike *Hart*, the Defendants here were able to roundly corroborate the incriminating accounts: the Defendants identified four Craigslist advertisements by the Plaintiff for the sale of vehicles; the advertisements listed the Plaintiff's phone number, which matched the number that he previously used when selling cars illegally; and a witness confirmed that the Plaintiff recently and exclusively sold one of the four advertised vehicles. Moreover, the Defendants verified the Plaintiff's unequivocal intention to sell the vehicles advertised on Craigslist by establishing a meeting through direct communication with him to purchase one of the vehicles. In *Hart*, the corroborating evidence was largely circumstantial: there, the plaintiff drove equipment likely used in the theft; worked during the time of the theft; and associated with a person who claimed to know where the stolen merchandise was located. Nonetheless, the Ninth Circuit held that "substantial evidence" existed in *Hart* to conclude that the plaintiff there was responsible for the theft. In the present case, the Defendants had far more inculpatory evidence beyond opportunity, association, and a similar conviction.

Nonetheless, the Ninth Circuit has held that the issue of probable cause is generally reserved for the jury in Section 1983 actions; thus, summary judgment is only appropriate "if no

reasonable jury could find that the officers did or did not have probable cause to arrest." *McKenzie v. Lamb*, 738 F.2d 1005, 1007–08 (9th Cir. 1984). When viewed in the light most favorable to the Plaintiff, the Court cannot conclude that every reasonable juror would agree that probable cause existed, despite the difficulty in concluding otherwise. Therefore, the Court cannot grant summary judgment on this basis.

*2. Clearly Established*

Turning to the second prong, the Court finds that the Defendants did not violate a clearly established right. Consequently, even if a jury might theoretically conclude that the Defendants violated a constitutional right, the Court finds that summary judgment is appropriate.

In defining a constitutional right for purposes of qualified immunity, the Supreme Court has stated that a right must be defined with specificity and should be particularized. *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). In *Emmons*, the Court articulated the question of qualified immunity as "whether two police officers violated clearly established law when they forcibly apprehended a man at the scene of a reported domestic violence incident." *Id.* at 501.

The right in question here is the right to be free from arrest without probable cause. However, only asking whether the Defendants understood that a warrantless arrest in the abstract requires probable cause is insufficient and contravenes the Supreme Court's directive in *Emmons*. Qualified immunity exists to protect government officials while making reasonable but mistaken judgments and the shields "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341. Defining the issue as the broad requirement for an arrest would destroy that protection and would allow citizens to sue law enforcement officers for every reasonable, but mistaken determination about probable cause. That is not the law. Courts frequently disagree and sometimes err when determining whether probable cause exists. When law enforcement officers do the same, it is patently absurd to hold them liable. As the Supreme Court

clearly expressed in *Emmons*, the question is not whether officers knew the general requirements for an arrest, but whether the particular arrest was clearly unlawful. Thus, the question here is not whether the Defendants knew the standards for a lawful arrest, as the Plaintiff contends; the issue is whether the particular challenged arrest was clearly unlawful. Meaning: would every reasonable official have understood that no probable cause existed to arrest the Plaintiff.

This Court finds that a reasonable official could conclude that probable cause existed. In this case, one state court judge already determined—after more than two hours of oral argument—that probable cause existed, which this Court finds is eminently reasonable given the incriminating evidence. An anonymous tipster indicated that the Plaintiff was selling vehicles; a witness informed the Defendants that she recently and exclusively purchased a vehicle from the Plaintiff; and the Plaintiff had listed four vehicles for sale on Craigslist, had directly arranged a meeting with the Defendants to sell one of the advertised vehicles, and had been convicted of the same crime in 2015. Considering the facts, it is impossible to conclude that every reasonable officer would have believed that the evidence was insufficient to establish probable cause. Therefore, the Court finds that the Defendants did not violate a clearly established right and summary judgment should be granted.

### B. State Law Claims

The Plaintiff brought two pendent state law claims: false arrest and false imprisonment. The Court dismisses these remaining causes of actions for want of subject-matter jurisdiction, since no federal cause of action remains, and the case is early in its proceedings. 28 U.S.C. § 1367 (c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1169 (9th Cir. 2002) ("Because the district court did not err in granting summary judgment on the federal claims, it did not abuse its discretion in dismissing

the state-law claims."). In sum, the Court grants summary judgment for the Defendants on the Section 1983 claim and dismisses the state law claims for lack of jurisdiction.

**CONCLUSION**

IT IS HEREBY ORDERED that the Defendants' Motion for Summary Judgment (ECF No. 10) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close this case accordingly.

IT IS SO ORDERED.

Dated this 8th day of August, 2019.

_____
ROBERT C. JONES
United States District Judge